## ELLA M. BURTIS *vs.* HOWARD BURTIS.

Suffolk. March 22, 23, 1894. — June 20, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Divorce — Entry of "Without Prejudice" — Jurisdiction — Domicil.*

On a libel for divorce it appeared that a former libel between the same parties was dismissed for want of jurisdiction "without prejudice." *Held*, that, there being no limitation upon the effect of the words "without prejudice," they must be taken to have been used generally, and to mean without prejudice to the right of the libellant to bring a new suit and to try it as if the questions involved were all presented for the first time.

---

The theory of law, that husband and wife are one person, and, wherever the wife may be actually, she is constructively with her husband, is not applicable to a wife who remains in a place where she and her husband last lived together after he is gone, and brings a suit against him for a divorce founded on his misconduct while they were together. She may retain her old domicil, acquired when she and her husband were actually abiding in the same place, and is not compelled to follow him to a place where she never lived merely because before she discovered his offence she intended to go there with him; but this exception to the general law of domicil has no application in suits brought by the husband against the wife for her misconduct.

LIBEL, filed on December 8, 1892, by Ella M. Burtis, for a divorce from Howard Burtis, on the grounds of adultery and cruel and abusive treatment.

Trial in the Superior Court, before *Fessenden,* J., who dismissed the libel for want of jurisdiction; and the libellant alleged exceptions. The facts sufficiently appear in the opinion.

The case was argued at the bar in March, 1894, and afterwards was submitted on the briefs to all the judges.

*J. M. Browne,* for the libellant.

*C. T. Duncklee,* (*F. E. H. Gary* with him,) for the libellee.

KNOWLTON, J. The former libel between these parties was dismissed for want of jurisdiction " without prejudice." There being no limitation upon the effect of the words " without prejudice," they must be taken to have been used generally, and to mean without prejudice to the right of the libellant to bring a new suit, and to try it as if the questions involved were all presented for the first time.

The first three paragraphs of the bill of exceptions state facts which must be treated as agreed or established. There are matters referred to in other parts of the bill in regard to which only the evidence is stated, some of which was apparently uncontradicted. The only question of law raised is upon the refusal of the court to rule, for the purposes of the case, that the domicil of the libellant remained in Boston.

There is no dispute that the domicil of both parties was in Boston until the libellee went to Brooklyn in the State of New York, in September, 1891. The libellant did not go there with him. In July, 1891, she went to California to visit her mother, and she remained there until June, 1892, when she returned to Boston. Her absence was for a temporary purpose, and there is no evidence which would warrant a finding that she acquired a

domicil in California. Upon the undisputed facts, her domicil remained in Boston, unless the residence of her husband in Brooklyn while she was in California, and before she knew of his adultery,* and while she expected to return and live with him, worked a change of her domicil. Undoubtedly it would have had that effect except for his offence, and for her determination, when she discovered it, to take advantage of her legal right to proceed against him for a divorce. The change would have come, not because she personally changed her place of abode, but because in the theory of law husband and wife are one person, and, wherever the wife may be actually, she is constructively with her husband. But this theory or fiction is not applicable to a wife who remains in a place where she and her husband last lived together after he has gone, and brings a suit against him for a divorce founded on his misconduct while they were together. It would be unjust to apply this theory against a woman who is seeking a divorce for a wrong inflicted on her by her husband. In order to obtain her rights under such a rule of law, she might be obliged to follow her husband as often as he migrated, even to the ends of the earth. The American doctrine that a wife may have a separate domicil from her husband when she seeks a divorce on account of a wrong inflicted upon her is therefore well established, but the precise limits of it have never been settled by actual adjudication in this Commonwealth. In some of the cases there are statements which imply that, from the time of a delictum which would justify the wife in leaving her husband, she should be treated as a person who has a right to fix her own domicil, and the husband should not be permitted to assert this fiction of law against her. It may be argued with much force, that, if she proves the wrong as she alleges it, she

---

* The bill of exceptions recited that her first information of her husband's adultery was in December, 1891, while she was in California ; that she refused to again live with her husband, and so informed him by letter in March, 1892 ; that within five days after she returned to Boston, in June, 1892, she filed her libel for divorce, in which she alleged that the libellee was a resident of Brooklyn in the State of New York ; that the libel was dismissed for want of jurisdiction " without prejudice "; that immediately thereafter she filed a second libel for divorce, in which she alleged that the libellee was a resident of Boston, and that when she came from California to Boston she intended " getting a separation from her husband."

thereby establishes a right to be emancipated from her husband from the time of the commission of the wrongful act, and a right to be free from the thraldom of this theory of law, and to claim a domicil for herself according to the fact as shown by her personal residence. If § 5 of Pub. Sts. c. 146, applies to a libel brought by a wife as well as to a libel brought by a husband, it seems to recognize the right of a wife to acquire a new domicil if the husband does that which entitles her to a divorce.

But whether this exception to the general rule should be carried so far in favor of a wife as to permit her to acquire a new domicil before she brings a suit for a divorce is a question which we have no occasion to decide in this case, and upon which we express no opinion. It is enough for the purposes of the present libellant to say that she has a right to retain her old domicil, acquired when she and her husband were actually abiding in the same place, and that she is not compelled to follow him to a place where she never lived merely because, before she discovered his offence, she intended to go there with him.

In *Harteau* v. *Harteau*, 14 Pick. 181, the subject is discussed at length by Chief Justice Shaw, and conclusions are reached which fully cover this case. He says, among other things, "Suppose a husband commits adultery and then purchases a house and actually takes up his domicil in another State, but before his wife has joined him she is apprised of the fact, and immediately files a libel for divorce, . . . it would be difficult to say that she is not entitled to have a divorce here." In *Brett* v. *Brett*, 5 Met. 233, 235, Mr. Justice Dewey cites this case with approval and affirms the general doctrine. In *Shaw* v. *Shaw*, 98 Mass. 158, 161, Mr. Justice Foster says, "After the delictum was committed by the husband which caused the wife to separate herself from him and justified her in doing so, no subsequently acquired domicil of his could draw after it hers and change it so as to deprive the courts of Massachusetts of their jurisdiction to grant a divorce for an offence committed while the domicil of both remained in this Commonwealth." Well considered cases in other jurisdictions go further than is necessary to sustain the position of the libellant in the present case. *Cheever* v. *Wilson*, 9 Wall. 108, 123. *Ditson* v. *Ditson*, 4 R. I. 87, 107. *Harding* v. *Alden*, 9 Greenl. 140. See also Bish. Mar., Div. & Sep. §§ 112

to 121.   2 Kent Com. 110, note.   5 Am. & Eng. Encyc. of Law, 755, 756, and cases cited.

It is to be noticed that this exception to the general law of domicil is applied to prevent injustice only in cases where the wife brings a suit for divorce founded on the husband's wrong. It has no application in suits brought by the husband against his wife for her misconduct.   In such cases there is no reason why the general rule should not apply, and the numerous decisions stating the general rule in those suits are not in conflict with the others which state the exception.

In the present case all the hardship and injustice would follow which the exception was intended to prevent, if the wife were obliged to go to the State of New York to pursue her remedy in a jurisdiction where she is a stranger.   A majority of the court are of opinion that the entry should be

*Exceptions sustained.*